UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:19-CV-00175-GNS

PATRICIA TERRY; and
SAM TERRY                                                                                                 PLAINTIFFS

v.

ETHICON, INC.; and
JOHNSON & JOHNSON                                                                                 DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Defendants Ethicon, Inc. and Johnson & Johnson's Partial Motion for Summary Judgment (DN 52) and Motion for Summary Judgment (DN 54) and a plethora of expert witness challenges both parties have filed against each other as identified in the parties' Joint Status Report (DN 109). The motions are now ripe for adjudication. For the reasons that follow, all motions will be **HELD IN ABEYANCE** as outlined below.

**I.     BACKGROUND**

Plaintiff Patricia Terry ("Patricia") underwent a surgical procedure to implant a Gynecare TVT-Secur ("TVT-S") device to treat her urinary stress incontinence and cystourethrocele. (Defs.' Mot. Summ. J. 3, DN 54; Pls.' Short Form Compl. ¶¶ 8-9, DN 1; Defs.' Mot. Summ. J. Ex. 1, at 4, DN 54-1). Patricia alleges a multitude of ailments stemming from the implantation of this device. (Defs.' Mot. Summ. J. 3-4; P. Terry Dep. 105:1-108:24, 113:1-24, June 21, 2017, DN 54-4; Defs.' Mot. Summ. J. Ex. 1, at 5-6). Defendants Ethicon, Inc. ("Ethicon") and Johnson & Johnson are alleged to be the designers, manufacturers, marketers, and sellers of the TVT-S. (First Am. Master Compl. ¶ 7, DN 75-1; Ethicon Master Answer ¶ 7, DN 75-2; Johnson & Johnson Master Answer ¶ 7, DN 75-3).

1

Plaintiffs Patricia and Sam Terry ("Sam") bring this 18-count action against Defendants, which is one of 400 cases selected for discovery as part of the Ethicon Wave 6 multidistrict litigation cases. (Pls.' Short Form Compl. ¶¶ 6 , 13; Defs.' Mot. Summ. J. 2, DN 54; Pretrial Order #251, at 1, 8, DN 20). Defendants have filed two motions for summary judgment, one seeking summary judgment on all of Plaintiffs' claims based on bankruptcy judicial estoppel and the other seeking dismissal of some of Plaintiffs' claims based on other grounds. (Defs.' Mot. Summ. J. 5; Defs.' Partial Mot. Summ. J. 1-2, DN 52). The parties have also filed challenges to each other's expert witnesses should the case proceed to trial. (Joint Status Report 3-13, DN 109).

## II.   JURISDICTION

Diversity jurisdiction exists over this matter, as Plaintiffs are Kentucky residents and Johnson & Johnson and Ethicon are both incorporated with their principal places of businesses in New Jersey, and the amount-in-controversy appears to exceed the $75,000 threshold. 28 U.S.C. § 1332; (Pls.' Short Form Compl. ¶ 4; Ethicon Master Answer ¶¶ 3-4; Johnson & Johnson Master Answer ¶¶ 3-4).

## III.   STANDARD OF REVIEW

In ruling on a motion for summary judgment, the Court must determine whether there is any genuine issue of material fact that would preclude entry of judgment for the moving party as a matter of law. *See* Fed. R. Civ. P. 56(a). The moving party bears the initial burden of stating the basis for the motion and identifying evidence in the record that demonstrates an absence of a genuine dispute of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If the moving party satisfies its burden, the non-moving party must then produce specific evidence

proving the existence of a genuine dispute of fact for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

While the Court must view the evidence in the light most favorable to the non-moving party, the non-moving party must do more than merely show the existence of some "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (citation omitted). Rather, the non-moving party must demonstrate that a genuine factual dispute exists by "citing to particular parts of the materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute . . . ." Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient" to overcome summary judgment. *Anderson*, 477 U.S. at 252.

## IV.     DISCUSSION

Defendants argue that Patricia should be judicially estopped from asserting her claims against them. (Defs.' Mot. Summ. J. 1). On August 11, 2010, Patricia filed a Chapter 13 bankruptcy petition. (Defs.' Mot. Summ. J. Ex. 2, at 2-4, DN 54-2). Defendants argue that Patricia should have disclosed her November 27, 2012, lawsuit, i.e., the case *sub judice*, to the bankruptcy court at some point before the close of her bankruptcy case on September 29, 2014, and that her failure to do so gave her an advantage in her bankruptcy proceeding by preventing her creditors from reaping any potential gain arising from this lawsuit. (Defs.' Mem. Supp. Mot. Summ. J. 6-9, DN 55; Defs.' Mot. Summ. J. Ex. 5, at 4, DN 54-5).

As an initial matter, the Court must determine what law governs the judicial estoppel issue. As the Sixth Circuit has held, "even in diversity actions[,] . . . federal law rather than state law governs application of the [judicial estoppel] doctrine in the federal courts . . . ." *Watkins v. Bailey*, 484 F. App'x 18, 20 n.1 (6th Cir. 2012) (citing *Edwards v. Aetna Life Ins. Co.*, 690 F.2d 595, 598

n.4 (6th Cir. 1982)). Which federal circuit's law to apply must be decided as well. In multidistrict litigation cases originating in a different forum, "the law of a transferor forum on a federal question . . . merits close consideration, but does not have stare decisis effect in a transferee forum situated in another circuit." *In re Korean Air Lines Disaster of Sept. 1, 1983*, 829 F.2d 1171, 1176 (D.C. Cir. 1987), *aff'd*, 490 U.S. 122 (1989). "[I]n a federal multidistrict litigation there is a preference for applying the law of the transferee district, [but] it is not clear that precedent 'unique' to a particular circuit and arguably divergent from the predominant interpretation of a federal law . . . should be applied to state . . . laws or federal . . . claims that originated in other circuits." *In re Cardizem CD Antitrust Litig.*, 332 F.3d 896, 911 n.17 (6th Cir. 2003) (internal citations omitted) (citing *Korean Air Lines*, 829 F.2d at 1171).

In sum, Sixth Circuit precedent will guide the analysis in this case; upon review, the Fourth Circuit's[1] precedent on bankruptcy judicial estoppel does not materially differ from that of the Sixth Circuit. *See Robertson v. Flowers Baking Co. of Lynchburg, LLC*, No. 6:11-cv-00013, 2012 WL 830097, at *3-7 (W.D. Va. Mar. 6, 2012) (outlining in detail Fourth Circuit bankruptcy judicial estoppel jurisprudence) (citations omitted). The Sixth Circuit in *White v. Wyndham Vacation Ownership, Inc.*, 617 F.3d 472 (6th Cir. 2010), outlined the bankruptcy judicial estoppel doctrine:

> The doctrine of judicial estoppel "generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." This doctrine is "utilized in order to preserve 'the integrity of the courts by preventing a party from abusing the judicial process through cynical gamesmanship.'"
>
> . . .
>
> [T]o support a finding of judicial estoppel [in the bankruptcy context], [the Court] must find that: (1) [the plaintiff] assumed a position that was contrary to the one that she asserted under oath in the bankruptcy proceedings; (2) the bankruptcy court adopted the contrary position either as a preliminary matter or as part of a final

---

[1] This case was transferred from the Southern District of West Virginia. (DN 79).

> disposition; and (3) [the plaintiff's] omission did not result from mistake or inadvertence. In determining whether [the plaintiff's] conduct resulted from mistake or inadvertence, this court considers whether: (1) she lacked knowledge of the factual basis of the undisclosed claims; (2) she had a motive for concealment; and (3) the evidence indicates an absence of bad faith. In determining whether there was an absence of bad faith, we will look, in particular, at [the plaintiff's] "attempts" to advise the bankruptcy court of her omitted claim.

*Id.* at 476-78 (internal citations omitted). Determining whether Plaintiffs are judicially estopped from asserting their claims requires examining both Patricia's bankruptcy case and the instant case.

Patricia filed her voluntary Chapter 13 bankruptcy petition on August 11, 2010.[2] (Defs.' Mot. Summ. J. Ex. 5, at 11, DN 54-5). The bankruptcy court confirmed Patricia's Chapter 13 plan on November 22, 2010. (Defs.' Mot. Summ. J. Ex. 5, at 7). The TVT-S was implanted in Patricia on December 27, 2011. (Pls.' Fact Sheet 5, DN 35). Patricia made a motion to modify her Chapter 13 plan on February 28, 2012, which was granted on March 22, 2012. (Defs.' Mot. Summ. J. Ex. 5, at 6-7). Patricia had the TVT-S removed on August 3, 2012 because she "was in terrible pain[,]" first attributing her symptoms to that device in mid-2012. (Pls.' Fact Sheet 6-7). She saw three different doctors between 2012 and 2013 to help her deal with her ongoing problems purportedly stemming from the implantation of the TVT-S. (Pls.' Fact Sheet 7-8). On November 19, 2012, Patricia made another motion to modify her Chapter 13 plan. (Defs.' Mot. Summ. J. Ex. 5, at 5). On November 27, 2012, the Terrys brought the instant lawsuit. (Defs.' Mot. Summ. J. ¶ 12; Pls.' Short Form Compl., DN 1). On December 12, 2012, the bankruptcy court granted Patricia's motion to modify her Chapter 13 plan. (Defs.' Mot. Summ. J. Ex. 5, at 5). The bankruptcy trustee notified the bankruptcy court of the completion of Patricia's Chapter 13 plan on March 10, 2014. (Defs.' Mot. Summ. J. Ex. 5, at 5). Patricia filed a motion for an entry of discharge on April 10,

---

[2] At the time of her Chapter 13 bankruptcy petition, Patricia went by the surname "Kaiser." (Defs.' Mot. Summ. J. 1 n.2; Pls.' Resp. Defs.' Mot. Summ. J. 2).

5

2014, which she then withdrew on June 3, 2014. (Defs.' Mot. Summ. J. Ex. 5, at 4-5). The bankruptcy trustee submitted its final report and account on August 19, 2014. (Defs.' Mot. Summ. J. Ex. 5, at 4). Patricia's bankruptcy case was closed on September 29, 2014 without a discharge pursuant to 11 U.S.C. § 1328(f), as Patricia had previously filed a Chapter 7 bankruptcy proceeding within four years of the filing of her Chapter 13 proceeding. (Defs.' Mot. Summ. J. Ex. 5, at 4; Pls.' Resp. Defs.' Mot. Summ. J. Ex. C, DN 58-3; Pls.' Resp. Defs.' Mot. Summ. J. 2, DN 58). Although Patricia did not receive a discharge, the trustee's final report and account notes that Patricia: (1) was able to delay payment on $35,541.70 worth of unsecured debt; (2) only paid $1,110.19 in principal on $22,910.89 worth of allowed unsecured claims; and (3) paid no interest to creditors. (Defs.' Mot. Summ. J. Ex. 6, at 2-4, DN 54-6).

### A. Assuming a Contrary Position

Plaintiffs do not dispute that Patricia had a duty to disclose her post-petition lawsuit before the close of her bankruptcy case. As the Sixth Circuit has stated:

> A debtor in a Chapter 13 proceeding has a duty to disclose any potential claim as an asset to the bankruptcy court in a schedule of assets and liabilities. This disclosure obligation is ongoing, meaning a debtor has 'an express, affirmative duty to disclose all assets, including contingent and unliquidated claims' that arise at any time during the bankruptcy proceeding.

*Davis v. Fiat Chrysler Autos. U.S., LLC*, 747 F. App'x 309, 314 (6th Cir. 2018) (internal citation omitted) (quoting *White*, 617 F.3d at 479 n.5). In *Davis*, the plaintiff filed for Chapter 13 bankruptcy in 2008, and even though the events giving rise to the plaintiff's lawsuit did not arise until around March 2013, the Sixth Circuit found the plaintiff's lawsuit was barred by judicial estoppel because the plaintiff failed to disclose that lawsuit to the bankruptcy court before her bankruptcy case closed in December 2013. *Id*. at 311, 316.

6

Like the plaintiff in *Davis*, by failing to amend her schedule of assets to include her post-petition lawsuit before the completion of her plan and the close of her case, Patricia assumed a position that was contrary to the one that she is asserting in the case *sub judice*. *Id*. at 314-16 (finding first prong of judicial estoppel satisfied when debtor failed to disclose post-petition lawsuit at any point to the bankruptcy court (citations omitted)). Any argument that Patricia "did not know all the facts" supporting her claim is foreclosed by her Short Form Complaint filed on November 27, 2012 (almost two years before the close of her bankruptcy case), modeled off of the First Amended Master Complaint in the MDL proceedings which outlined in detail the facts underlying Patricia's claims. *See id*. at 315-16 ("[T]he test is not whether [plaintiff] knew *all* of the facts that *could possibly* support a claim, but instead whether she had sufficient information to know that she had a possible cause of action against [defendant] . . . before her bankruptcy was discharged. . . . [T]he record and [plaintiff's] own allegations show there was ample information prior to [the close of her bankruptcy case] to trigger [her] disclosure obligation to the bankruptcy court, meaning that by her failure to do so she 'assumed a position that was contrary to the one that she asserted under oath in the bankruptcy proceedings.'" (internal citations omitted) (citation omitted)); (Pls.' Short Form Compl., DN 1; Defs.' Mot. Summ. J. Ex 5, at 4, DN 54-5). The first prong of the judicial estoppel analysis is therefore satisfied.[3]

---

[3] A review of *Davis* and another Sixth Circuit decision reveals either (1) the Sixth Circuit assumes that a post-petition lawsuit is property of the estate or (2) whether a lawsuit is property of the estate is irrelevant because a debtor possesses a duty to disclose all post-petition causes of action. *See generally Davis*, 747 F. App'x at 314-16; *Kimberlin v. Dollar Gen. Corp.*, 520 F. App'x 312, 315 (6th Cir. 2013). Either way, whether Patricia's cause of action actually constituted property of her Chapter 13 bankruptcy estate does not matter. In either event, Patricia has admitted that her lawsuit did constitute property of her Chapter 13 estate. (Pls.' Resp. Defs.' Mot. Summ. J. 1). As discussed below, however, whether Patricia's lawsuit in fact constituted property of her Chapter 13 bankruptcy estate is relevant in determining whether Patricia, the bankruptcy trustee, or both retain the requisite ability to pursue Patricia's lawsuit.

### B.     Bankruptcy Court's Adoption of Inconsistent Position

Plaintiffs indirectly dispute the element that "the bankruptcy court adopted the contrary position either as a preliminary matter or as part of a final disposition."[4]  *Davis*, 747 F. App'x at 313 (internal quotation marks omitted).  Plaintiffs point out that the bankruptcy court dismissed Patricia's bankruptcy case without a discharge. (Pls.' Resp. Defs.' Mot. Summ. J. Ex. C, DN 58-3).  Additionally, Patricia was aware of her ineligibility for discharge early on in her bankruptcy case, having been notified of such fact on August 26, 2010.  (Pls.' Resp. Defs.' Mot. Summ. J. Ex. B, DN 58-2).  That being said, securing a discharge is not the only way to evidence the bankruptcy court's adoption of a misleading position proffered by Plaintiffs: "[W]hen a bankruptcy court— which must protect the interests of all creditors—approves a payment from the bankruptcy estate on the basis of a party's assertion of a given position, that . . . is sufficient judicial acceptance to estop the party from later advancing an inconsistent position."  *White*, 617 F.3d at 479 (alteration in original) (internal quotation marks omitted) (quoting *Lewis v. Weyerhaeuser Co.*, 141 F. App'x 420, 425 (6th Cir. 2010)).

On November 19, 2012, Patricia moved the bankruptcy court for a modification of her Chapter 13 bankruptcy plan. (Defs.' Mot. Summ. J. Ex. 5, at 5).  Patricia and Sam filed the instant lawsuit on November 27, 2012.  (Pls.' Short Form Compl., DN 1).  The bankruptcy court granted Patricia's proposed modification on December 12, 2012. (Defs.' Mot. Summ. J. Ex. 5, at 5).  In other words, Patricia allowed the bankruptcy court to accept her proposed modification of her Chapter 13 plan even though she did not disclose her lawsuit.  Although her lawsuit was filed shortly after her motion, Patricia still had the opportunity to inform the bankruptcy court of her

---

[4] The characterization of "indirectly" is appropriate because Plaintiffs' response to Defendants' motion for summary judgment is directed toward refuting the existence of bad faith and not really toward this element of bankruptcy judicial estoppel.  (Pls.' Resp. Defs.' Mot. Summ. J. 1, 4-5).

lawsuit before its order and definitely before the close of her bankruptcy case roughly two years later. This situation is similar to that in *Allen v. C & H Distributors, L.L.C.*, 813 F.3d 566 (5th Cir. 2015), where the Court found satisfaction of the judicial acceptance prong of the judicial estoppel doctrine after "the [plaintiffs] never disclosed the existence of their personal injury suit to the bankruptcy court, even though they amended the Plan three separate times after filing the personal injury suit." *Id*. at 572-73; *see also In re Flugence*, 738 F.3d 126, 130 (5th Cir. 2013) (holding that the judicial acceptance element was satisfied when "the bankruptcy court accepted the prior position by omitting any reference to the personal-injury claim in the modified plan" because "[h]ad the court been aware of the claim, it may well have altered the plan."). By allowing for the modification of Patricia's Chapter 13 plan without the disclosure of her lawsuit, the bankruptcy court adopted Patricia's implied assertion that such lawsuit did not exist.

Although it is true that the plaintiff in *Davis* received a discharge, the Court there found satisfaction of the second prong because of the bankruptcy court's confirmation of her Chapter 13 plan. *Davis*, 747 F. App'x at 314 (citation omitted). Thus, the fact that Patricia did not receive a discharge at the end of her Chapter 13 plan is immaterial, as articulated by the Seventh Circuit:

> Williams [i.e., the Chapter 13 debtor] never received a discharge because the bankruptcy court eventually dismissed his case, and in that respect his case differs from *Cannon-Stokes*. The difference, however, is immaterial. Williams still received significant financial benefits during his short stint in bankruptcy. His filing, for instance, triggered the automatic stay, holding creditors at bay for some 20 months and thereby enabling him to keep his house and car, and to avoid new interest charges on his mortgage arrearage while he pursued his undisclosed civil-rights suit. In the meantime, the bankruptcy court confirmed a reorganization plan that temporarily relieved Williams of most of his debts without further interest or penalty.
>
> Williams's debts may not have been permanently wiped away, but a debtor who receives even preliminary benefits from concealing a chose in action from his creditors can still be estopped from pursuing the suit in the future. To hold otherwise would give debtors an incentive to game the bankruptcy system. Debtors could take a wait-and-see approach to disclosure by prosecuting an undisclosed

9

> claim while waiting to see how favorably the bankruptcy proceeding unfolds before discharge. That approach would undermine both the primary aim of judicial estoppel, which is to protect the integrity of the judicial process, and the bankruptcy law's goal of unearthing all assets for the benefit of creditors.

*Williams v. Hainje*, 375 F. App'x 625, 627-28 (7th Cir. 2010) (internal citations omitted); *see also Assasepa v. JPMorgan Chase Bank*, No. 1:11-cv-156, 2012 WL 88162, at (S.D. Ohio Jan. 11, 2012) ("It is not necessary that Ms. Assasepa's bankruptcy case be discharged (closed) for the judicial estoppel doctrine to apply. Where, as here, a bankruptcy petitioner has received 'significant financial benefits,' such as being free of debt-collectors and entering a payment plan designed to relieve debts, judicial estoppel is appropriate."). Patricia benefitted from her Chapter 13 bankruptcy even without a discharge: She received the benefit of the automatic stay, held the collection of most of her unsecured debt at bay for almost four years, and paid no interest to creditors. (Defs.' Mot. Summ. J. Ex. 6, at 2-4, DN 54-6).

For all of these reasons, therefore, the second prong is satisfied.

### C. Bad Faith

The source of the primary dispute between the parties lies in whether Patricia's omission of her lawsuit was inadvertent or done in bad faith.

> In determining whether an omission was the result of mistake of inadvertence, we consider a litigant's "knowledge of the factual basis of the undisclosed claims," any "motive for concealment," and if "the evidence indicates an absence of bad faith"— with particular focus on any attempt 'to advise the bankruptcy court of [an] omitted claim."

*Davis*, 747 F. App'x at 316 (alteration in original) (citations omitted). As in *Davis*, "[t]he final two prongs of this inquiry are not at issue here: there is no evidence that [Patricia] made any disclosure about a potential claim to the bankruptcy court, and if a claim existed, there would be a motive to conceal this asset." *Id.* (citing *White*, 617 F.3d at 478-79; *Lewis*, 141 F. App'x at 426). Nor is there any dispute about Patricia's "knowledge of the factual basis of [her] undisclosed

claim[]"—Plaintiffs' Short Form Complaint, incorporates the First Amended Master Complaint which outlines in detail the circumstances surrounding this case, evidencing Plaintiffs' knowledge of the facts giving rise to the instant lawsuit. Plaintiffs' Short Form Complaint was filed before the bankruptcy court's order granting Patricia modification of her Chapter 13 plan and almost two years before the closing of her bankruptcy case. (Pls.' Short Form Compl., DN 1; Defs.' Mot. Summ. J. Ex. 5, at 4). The third and final element for the application of bankruptcy estoppel, like the other two, is satisfied here.

### D. Chapter 13 Bankruptcy Trustee's Right to Pursue Action

Plaintiffs argue in the alternative that this Court should afford the bankruptcy trustee the opportunity to involve itself in this action, which Defendants do not seem to dispute. (Pls.' Resp. Defs.' Mot. Summ. J. 5; Defs.' Reply Mot. Summ. J. 1-3). "[W]hether a debtor or only a bankruptcy trustee has the right to prosecute legal claims related to the bankruptcy estate[] is better characterized as a real-party-in-interest question governed by [Fed. R. Civ. P.] 17." *Kimberlin*, 520 F. App'x at 314 (citations omitted). The Sixth Circuit in *Kimberlin* expressly declined to reach that issue.[5] *Id*. Regardless of whether the trustee has the exclusive or concurrent right to prosecute a cause of action that is a part of the bankruptcy estate, the trustee may have some interest in that cause of action: "In a Chapter 13 bankruptcy proceeding, the debtor and the trustee have *concurrent* standing to pursue claims on behalf of the estate, and both are real parties in interest." *Owens v. Dolgencorp, LLC*, No. 3:12-cv-313, 2013 WL 6795415, at *2 (S.D. Ohio Dec. 19, 2013) (citing Fed. R. Bankr. P. 6009, which provides "[w]ith or without court approval, the trustee or the

---

[5] The Sixth Circuit in *Stephenson v. Malloy*, 700 F.3d 265 (6th Cir. 2012), expressly held that a bankruptcy trustee in a Chapter 7 bankruptcy proceeding is the real party in interest in this situation. *See id*. at 271-72. The differences between the debtor and trustee's power over the bankruptcy estate in Chapter 7 versus Chapter 13 cases, however, are presumably why the Sixth Circuit in *Kimberlin* did not find *Stephenson* controlling on that issue.

11

debtor in possession may prosecute or may enter an appearance and defend any pending action or proceeding by or against the debtor, or commence and prosecute any action or proceeding in behalf of the estate before any tribunal.").

Plaintiffs' argument that the Court should allow the trustee an opportunity to pursue this action as the real party in interest is well-taken. Courts in the Sixth Circuit have recognized that when bankruptcy judicial estoppel bars a particular plaintiff from asserting certain claims, the bankruptcy trustee should still be given an opportunity to assert itself in the instant action. *See, e.g.*, *Piper v. Dollar Gen. Corp.*, No. 3:11-cv-554, 2011 WL 4565432, at *6-7 (M.D. Tenn. Sept. 29, 2011); *Owens*, 2013 WL 6795415, at *2. This Court will follow the remedy as espoused in *Piper* by staying the case to afford the trustee the opportunity to assert a claim in this case. As explained in *Owens*, "[i]n terms of judicial economy, it makes little sense to dismiss Plaintiff's . . . . claims on judicial estoppel grounds only to have the Bankruptcy Trustee file a new lawsuit reasserting those same claims." *Owens*, 2013 WL 6795415, at *2. Although Patricia is be judicially estopped from asserting her claims, the Court will refrain from entering an order to that effect at this point, as doing so at this time would be inappropriate without knowing to what extent the bankruptcy trustee will attempt to assert a claim.[6] *See Piper*, 2011 WL 4565432, at *5-7 (finding plaintiff judicially estopped from proceeding on causes of action but denying defendant's

---

[6] If there is any question about the Court's ability to address the judicial estoppel issue before addressing the real party in question issue, the Sixth Circuit in *Kimberlin* did just that. *Kimberlin*, 520 F. App'x at 314 ("The better approach, we think, is to bypass the Rule 17 aspect and resolve the judicial-estoppel issue . . . ."). Additionally, "[i]f the trustee declines to pursue an originally undisclosed cause of action[,] . . . an abandonment . . . occurs . . . . At that point the debtor is the proper party to pursue the claim, and the defense of judicial estoppel is available against the debtor . . . ." W. Homer Drake, Jr., et al., *Chapter 13 Practice and Procedure* § 16:7 (June 2019 update) (citing *Eastman v. Union Pac. R.R. Co.*, 493 F.3d 1151, 1156 n.3 (10th Cir. 2007)). In other words, even if the trustee abandons Patricia's lawsuit, judicial estoppel would still apply to bar Patricia's claims.

motion for summary judgment and staying matter for 30 days to allow trustee to file a Notice of Substitution). Finally, there are several other issues in this case that are more appropriately addressed once the extent of the involvement of the trustee is made clear.[7]

## V. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that Defendants Ethicon, Inc. and Johnson & Johnson's motions for summary judgment (DNs 52, 54) and the parties' expert witness challenges as outlined in their joint status report (DN 109) are **HELD IN ABEYANCE**. This is matter is **STAYED** for 30 days to afford the parties the opportunity to notify the bankruptcy trustee of the bankruptcy trustee's opportunity to insert itself in this action. At the conclusion of the 30-day period, the parties shall provide a status update to the Court, at which point the Court will determine how to proceed, including disposition of Defendants' motions for summary judgment (DNs 52, 54) and the parties' expert witness challenges as outlined in their joint status report (DN 109).

Greg N. Stivers, Chief Judge
United States District Court

cc: counsel of record

June 4, 2020

---

[7] These issues include: (1) whether Counts II, IV, and VI through XII of Plaintiffs' Short Form Complaint should be dismissed with prejudice upon Plaintiffs' concession that they would no longer pursue such claims; (2) whether Count XIII of Plaintiffs' Short From Complaint should be dismissed with prejudice because that claim is duplicative of others and requires the existence of privity of contract, which Defendants argue does not exist; (3) whether Count XV of Plaintiffs' Short Form Complaint should be dismissed with prejudice for lack of evidentiary support; (4) whether Sam may maintain his loss of consortium claim notwithstanding the application of bankruptcy judicial estoppel barring Patricia's claims; and (5) all of the parties' expert witness challenges as outlined in the parties' joint status report. (Defs.' Mot. Partial Summ. J. 1-2; Defs.' Mem. Supp. Mot. Partial Summ. J. 10-11; Pls.' Resp. Defs.' Mot. Partial Summ. J. 1-6; Defs.' Reply Mot. Partial Summ. J. 1-4; Defs.' Mem. Supp. Mot. Summ. J. 9; Pls.' Resp. Defs.' Mot. Summ. J. 1-2, 6-7; Joint Status Report 3-13, DN 109).