UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:19-CV-00175-GNS

PATRICIA TERRY; and
SAM TERRY                                                                                                        PLAINTIFFS

v.

ETHICON, INC.; and
JOHNSON & JOHNSON                                                                                   DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendants Ethicon, Inc. and Johnson & Johnson's Partial Motion for Summary Judgment (DN 52) and Motion for Summary Judgment (DN 54), Plaintiffs' Motion for Leave to File a Supplemental Brief (DN 116), and a plethora of expert witness challenges both parties have filed against each other as identified in the parties' Joint Status Report (DN 109). The motions are now ripe for adjudication. For the reasons that follow, Defendants' Motion for Summary Judgment (DN 54) will be **GRANTED IN PART** and **DENIED IN PART**; Plaintiffs' Motion for Leave (DN 116) will be **DENIED**; Defendants' Motion for Partial Summary Judgment (DN 52) and the parties' expert witness challenges will be **HELD IN ABEYANCE**; and this entire matter will be **STAYED** pending an appeal by Plaintiffs.

### I.      BACKGROUND

Plaintiff Patricia Terry ("Patricia") underwent a surgical procedure to implant a Gynecare TVT-Secur ("TVT-S") device to treat her urinary stress incontinence and cystourethrocele. (Defs.' Mot. Summ. J. 3, DN 54; Pls.' Short Form Compl. ¶¶ 8-9, DN 1; Defs.' Mot. Summ. J. Ex. 1, at 4, DN 54-1). Patricia alleges a multitude of ailments stemming from the implantation of this device. (Defs.' Mot. Summ. J. 3-4; P. Terry Dep. 105:1-108:24, 113:1-24, June 21, 2017, DN 54-

1

4; Defs.' Mot. Summ. J. Ex. 1, at 5-6).  Defendants Ethicon, Inc. ("Ethicon") and Johnson & Johnson are the designers, manufacturers, marketers, and sellers of the TVT-S.  (First Am. Master Compl. ¶ 7, DN 75-1; Ethicon Master Answer ¶ 7, DN 75-2; Johnson & Johnson Master Answer ¶ 7, DN 75-3).

Plaintiffs Patricia and Sam Terry ("Sam") bring this 18-count action against Defendants, which is one of 400 cases selected for discovery as part of the Ethicon Wave 6 multidistrict litigation cases. (Pls.' Short Form Compl. ¶¶ 6 , 13; Defs.' Mot. Summ. J. 2, DN 54; Pretrial Order #251, at 1, 8, DN 20).  Defendants have filed two motions for summary judgment, one seeking summary judgment on all of Plaintiffs' claims, primarily based on bankruptcy judicial estoppel, and the other seeking dismissal of some of Plaintiffs' claims on other grounds.  (Defs.' Mot. Summ. J. 5; Defs.' Partial Mot. Summ. J. 1-2, DN 52).  The parties have also filed challenges to each other's expert witnesses should the case proceed to trial.  (Joint Status Report 3-13, DN 109).

On June 4, 2020, this Court found merit in Defendants' bankruptcy judicial estoppel argument.  (Mem. Op. & Order 12, DN 114).  The Court refrained from entering an order granting Defendants' summary judgment motion on this basis with respect to Patricia's claims, however, as the parties noted (and the Court agreed) that the bankruptcy trustee in a debtor's bankruptcy proceeding should be given an opportunity to intervene in that debtor's civil action before bankruptcy judicial estoppel is applied to preclude that debtor's civil action.  (Mem. Op. & Order 11-13).  The bankruptcy trustee has since declined to intervene, so the Court is ready to enter judgment.  (Pls.' Mot. Leave File Suppl. Br. Ex. B, at 2, DN 116-2).

## II. **JURISDICTION**

Diversity jurisdiction exists over this matter, as Plaintiffs are Kentucky residents and Johnson & Johnson and Ethicon are both incorporated with their principal places of businesses in

New Jersey, and the amount-in-controversy appears to exceed the $75,000 threshold. 28 U.S.C. § 1332; (Pls.' Short Form Compl. ¶ 4; Ethicon Master Answer ¶¶ 3-4; Johnson & Johnson Master Answer ¶¶ 3-4).

### III. STANDARD OF REVIEW

In ruling on a motion for summary judgment, the Court must determine whether there is any genuine issue of material fact that would preclude entry of judgment for the moving party as a matter of law. *See* Fed. R. Civ. P. 56(a). The moving party bears the initial burden of stating the basis for the motion and identifying evidence in the record that demonstrates an absence of a genuine dispute of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If the moving party satisfies its burden, the non-moving party must then produce specific evidence proving the existence of a genuine dispute of fact for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

While the Court must view the evidence in the light most favorable to the non-moving party, the non-moving party must do more than merely show the existence of some "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (citation omitted). Rather, the non-moving party must demonstrate that a genuine factual dispute exists by "citing to particular parts of the materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute . . . ." Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient" to overcome summary judgment. *Anderson*, 477 U.S. at 252.

## IV. DISCUSSION

### A. Bankruptcy Judicial Estoppel

As mentioned, this Court previously determined that Patricia should be estopped from asserting her claims against Defendants on the principle of bankruptcy judicial estoppel. (Mem. Op. & Order 12). Plaintiffs have filed a motion for leave to file a supplemental brief in response to this Court's order along with their actual supplemental brief. (Pls.' Mot. Leave File Suppl. Br., DN 116; Pls.' Suppl. Br., DN 116-1). This Court previously outlined in depth why bankruptcy judicial estoppel bars Patricia from asserting her claims against Defendants. (Mem. Op. & Order 3-11). The Sixth Circuit in *White v. Wyndham Vacation Ownership, Inc.*, 617 F.3d 472 (6th Cir. 2010), outlined the bankruptcy judicial estoppel doctrine:

> [T]o support a finding of judicial estoppel [in the bankruptcy context], [the Court] must find that: (1) [the plaintiff] assumed a position that was contrary to the one that she asserted under oath in the bankruptcy proceedings; (2) the bankruptcy court adopted the contrary position either as a preliminary matter or as part of a final disposition; and (3) [the plaintiff's] omission did not result from mistake or inadvertence. In determining whether [the plaintiff's] conduct resulted from mistake or inadvertence, this court considers whether: (1) she lacked knowledge of the factual basis of the undisclosed claims; (2) she had a motive for concealment; and (3) the evidence indicates an absence of bad faith. In determining whether there was an absence of bad faith, we will look, in particular, at [the plaintiff's] "attempts" to advise the bankruptcy court of her omitted claim.

*Id.* at 478.

Plaintiffs challenge the Court's finding on the third element of the bankruptcy judicial estoppel test asserting that the Court erred in finding that Patricia's failure to disclose her civil lawsuit was not the result of mistake or inadvertence. (Pls.' Suppl. Br. 6-12, DN 116-1). Plaintiffs also believe that because Patricia did not receive a discharge in her Chapter 13 proceedings, bankruptcy judicial estoppel should not apply here. (Pls.' Reply Mot. Leave File Suppl. Br. 3-6, DN 120).

4

Patricia filed her voluntary Chapter 13 bankruptcy petition on August 11, 2010.[1] (Defs.' Mot. Summ. J. Ex. 5, at 11, DN 54-5). The bankruptcy court confirmed Patricia's Chapter 13 plan on November 22, 2010. (Defs.' Mot. Summ. J. Ex. 5, at 7). The TVT-S was implanted in Patricia on December 27, 2011. (Pls.' Fact Sheet 5, DN 35). Patricia made a motion to modify her Chapter 13 plan on February 28, 2012, which was granted on March 22, 2012. (Defs.' Mot. Summ. J. Ex. 5, at 6-7). Patricia had the TVT-S removed on August 3, 2012 because she "was in terrible pain[,]" first attributing her symptoms to that device in mid-2012. (Pls.' Fact Sheet 6-7). She saw three different doctors between 2012 and 2013 to help her deal with her ongoing problems purportedly stemming from the implantation of the TVT-S. (Pls.' Fact Sheet 7-8). On November 19, 2012, Patricia made another motion to modify her Chapter 13 plan. (Defs.' Mot. Summ. J. Ex. 5, at 5). On November 27, 2012, Plaintiffs brought the instant lawsuit. (Defs.' Mot. Summ. J. ¶ 12; Pls.' Short Form Compl., DN 1).

On December 12, 2012, the bankruptcy court granted Patricia's motion to modify her Chapter 13 plan. (Defs.' Mot. Summ. J. Ex. 5, at 5). The bankruptcy trustee notified the bankruptcy court of the completion of Patricia's Chapter 13 plan on March 10, 2014. (Defs.' Mot. Summ. J. Ex. 5, at 5). Patricia filed a motion for an entry of discharge on April 10, 2014, which she then withdrew on June 3, 2014. (Defs.' Mot. Summ. J. Ex. 5, at 4-5). The bankruptcy trustee submitted its final report and account on August 19, 2014. (Defs.' Mot. Summ. J. Ex. 5, at 4). Patricia's bankruptcy case was closed on September 29, 2014, without a discharge pursuant to 11 U.S.C. § 1328(f), because Patricia had previously filed a Chapter 7 bankruptcy proceeding within four years of the filing of her Chapter 13 proceeding. (Defs.' Mot. Summ. J. Ex. 5, at 4; Pls.' Resp.

---

[1] At the time of her Chapter 13 bankruptcy petition, Patricia went by the surname "Kaiser." (Defs.' Mot. Summ. J. 1 n.2; Pls.' Resp. Defs.' Mot. Summ. J. 2).

5

Defs.' Mot. Summ. J. Ex. C, DN 58-3; Pls.' Resp. Defs.' Mot. Summ. J. 2, DN 58). Although Patricia did not receive a discharge, the trustee's final report and account notes that Patricia: (1) was able to delay payment on $35,541.70 worth of unsecured debt; (2) only paid $1,110.19 in principal on $22,910.89 worth of allowed unsecured claims during that time; and (3) paid no interest to creditors during the pendency of the Chapter 13 case. (Defs.' Mot. Summ. J. Ex. 6, at 2-4, DN 54-6).

This Court previously found the satisfaction of all considerations making up the mistake-or-inadvertence prong, but Patricia only challenges the "motive for concealment" and "bad faith" considerations. (Pls.' Suppl. Br. 6-12; Pls.' Reply Mot. Leave File Suppl. Br. 3-6, DN 120). Patricia's explanation for why she did not reveal her civil lawsuit in some way during her Chapter 13 bankruptcy is that she believed herself to be ineligible for a discharge; because of that fact disclosure of her civil lawsuit was irrelevant, as her creditors could recover in full from her anyway. (Pls.' Supp. Br. 6-8). Patricia also relies heavily on *Martineau v. Wier*, 934 F.3d 385 (4th Cir. 2019), in support of her position that the bad faith prong cannot be satisfied here. (Pls.' Suppl. Br. 8-12).

Beginning with Patricia's latter contention, *Martineau* is significantly distinguishable from the case *sub judice*. The plaintiff in *Martineau*, represented by counsel, brought suit against multiple defendants for injuries stemming from an assault, eventually settling with the defendants in October of 2012. *Martineau*, 934 F.3d at 387. In June 2015, the plaintiff filed a pro se petition for Chapter 7 bankruptcy. *Id*. at 388. In July 2016, the plaintiff-debtor filed another suit against the defendants, in which the plaintiff-debtor sought to rescind the October 2012 settlement agreement as a result of information she learned in December 2013 pertaining to that lawsuit. *Id*. at 387-89. The defendants sought to invoke the doctrine of bankruptcy judicial estoppel against

the plaintiff-debtor because she failed to disclose her tort claims against them in her June 2015 Chapter 7 bankruptcy proceeding even after discovering the new information in December 2013 leading to her July 2016 lawsuit. *Id*. at 389. Although the district court found that bankruptcy judicial estoppel prevented the plaintiff-debtor from maintaining her July 2016 action against the defendants, the Fourth Circuit held the bad faith prong was not met and reversed. *Id*. at 393.

The Fourth Circuit found that the district court had "improperly applied a presumption of bad faith that is at odds with our case law and with the very nature of judicial estoppel." *Id*. There may be some conflict between Fourth and Sixth Circuit precedent in this regard. The Sixth Circuit's bad faith test as articulated in *White* and *Davis v. Fiat Chrysler Automobiles U.S., LLC*, 747 F. App'x 309, 316 (6th Cir. 2018), instructs courts to ascertain whether the evidence indicates an absence of bad faith, focusing on whether the plaintiff-debtor attempted to advise the bankruptcy court of her civil suit which seemingly can be viewed as establishing a presumption of bad faith. *See White*, 617 F.3d at 478; *Davis*, 747 F. App'x at 316. Even without application of a bad faith presumption the Fourth Circuit found to be improper, the totality of the circumstances here establishes Patricia's bad faith. *See Martineau*, 934 F.3d at 394 ("[A] court must consider each case's 'specific facts and circumstances' before holding a claim barred by judicial estoppel." (citation omitted)).

Patricia's current lawsuit was filed in the midst of her voluntary Chapter 13 bankruptcy; more specifically, Patricia filed the instant lawsuit eight days after filing a motion to modify her Chapter 13 plan and around two weeks before the bankruptcy court granted that motion. (Defs.' Mot. Summ. J. Ex. 5, at 5; Defs.' Mot. Summ. J. ¶ 12; Pls.' Short Form Compl., DN 1). In other words, Patricia specifically sought and was afforded a modification of her Chapter 13 plan and did not disclose to the bankruptcy court the fact that she filed the instant lawsuit almost

7

contemporaneously, which suggests that she did not divulge her civil case to the bankruptcy court to increase the chances of a favorable plan modification. *See Martineau*, 934 F.3d at 393 ("[T]here is the longstanding principle that judicial estoppel applies . . . when 'the party who is alleged to be estopped *intentionally* misled the court to gain unfair advantage . . . .'" (citations omitted)).

Additionally, Patricia's only explanation for not disclosing the instant action in her Chapter 13 bankruptcy is completely undermined by her actions in that proceeding. The plaintiff-debtor in *Martineau* proceeded with Chapter 7 bankruptcy pro se and did not initially disclose her tort claims because she believed those claims to be barred by her prior settlement agreement, an unrefuted and legitimate reason for nondisclosure. *Martineau*, 934 F.3d at 393. By contrast, Patricia was represented by counsel in both her Chapter 13 bankruptcy proceeding and in the case *sub judice*. (Defs.' Mot. Summ. J. Ex. 5, at 2; Mot. Withdraw 1, DN 117). Although Patricia makes much of the fact that she did not receive a discharge and that she knew she was not eligible for one after being notified of her ineligibility, she nonetheless specifically filed a motion for a discharge while the current lawsuit was proceeding and did not withdraw that motion until almost two months after she filed it. (Defs.' Mot. Summ. J. Ex. 5, at 4-5, 9). Affirmatively seeking a discharge during the pendency of the present action completely undermines Patricia's contention that she did not disclose this lawsuit to the bankruptcy court because she thought she was ineligible for a discharge.

Patricia's bad faith is intertwined with her motive for concealment, as she argues that her ineligibility for discharge negates any motive she may have had to conceal her civil lawsuit from her bankruptcy proceedings. This contention completely ignores the indisputable benefits Patricia received through her Chapter 13 bankruptcy even without having obtained a discharge: (1) delaying payment on $35,541.70 worth of unsecured debt; (2) only paying $1,110.19 in principal

8

on $22,910.89 worth of allowed unsecured claims during that time; and (3) paying no interest to creditors during that time. (Defs.' Mot. Summ. J. Ex. 6, at 2-4). As the Seventh Circuit in *Williams v. Hainje*, 375 F. App'x 625 (7th Cir. 2010), explained:

> The district court's use of judicial estoppel was not an abuse of discretion. . . .
>
> [Although the plaintiff-debtor] never received a discharge because the bankruptcy court eventually dismissed his case[,] . . . [the plaintiff-debtor] still received significant financial benefits during his short stint in [Chapter 13] bankruptcy. His filing, for instance, triggered the automatic stay, holding creditors at bay for some 20 months and thereby enabling him to keep [his property], and to avoid new interest charges . . . while he pursued his undisclosed civil-rights suit. In the meantime, the bankruptcy court confirmed a reorganization plan that temporarily relieved [the plaintiff-debtor] of most of his debts without further interest or penalty.
>
> [The plaintiff-debtor]'s debts may not have been permanently wiped away, but a debtor who receives even preliminary benefits from concealing a chose in action from his creditors can still be estopped from pursuing the suit in the future. To hold otherwise would give debtors an incentive to game the bankruptcy system. Debtors could take a wait-and-see approach to disclosure by prosecuting an undisclosed claim while waiting to see how favorable the bankruptcy proceeding unfolds before discharge. That approach would undermine both the primary aim of judicial estoppel, which is to protect the integrity of the judicial process, and the bankruptcy law's goal of unearthing all assets for the benefit of creditors.

*Id*. at 627-28 (internal citations omitted). Moreover, as the Court in *Davis* noted, "[i]t is *always* in a Chapter 13 petitioner's interest to minimize income and assets." *Davis*, 747 F. App'x at 316 (emphasis added) (internal quotation marks omitted) (quoting *Lewis*, 141 F. App'x at 426).

Patricia cites two Sixth Circuit cases in support of her position, both of which are distinguishable. (Pls.' Reply Mot. Leave 3-6 (citing *Browning v. Levy*, 283 F.3d 761, 776 (6th Cir. 2002); *Javery v. Lucent Techs., Inc. Long Term Disability Plan for Mgmt. or LBA Emps.*, 741 F.3d 686, 697-99 (6th Cir. 2014))). Beginning with the latter, in *Javery*, "[p]laintiff[-debtor] and his spouse disclosed the [civil] claims to their bankruptcy attorney in writing and discussed the claim with their bankruptcy attorney, which suggests that any error was the fault of the attorney and not

9

Plaintiff." *Javery*, 741 F.3d at 698. Although a plaintiff-debtor can avoid application of the bankruptcy judicial estoppel doctrine by showing that she made some kind of attempt in her bankruptcy proceedings to call attention to a pending civil lawsuit, no such facts have been alleged in the case *sub judice*.

As for *Browning*, the Sixth Circuit there found bankruptcy judicial estoppel inapplicable because the plaintiff-debtor, undergoing a Chapter 11 bankruptcy:

> [H]ad no motive for concealment in light of its role as a debtor-in-possession, having all the rights and duties of a trustee: Under [the plaintiff-debtor]'s Plan of Reorganization, all of the estate's assets are to be reduced to cash by [the plaintiff-debtor] and distributed to creditors in accordance with the terms of the plan and the priority provisions of the Bankruptcy Code. [The plaintiff-debtor] will thus receive no windfall as a result of its failure to disclose its claims, because only [the plaintiff-debtor]'s creditors will receive the distribution of any recovery from [the defendant in the plaintiff-debtor's civil case].

*Browning*, 283 F.3d at 776 (internal citation omitted). There is a crucial difference between the circumstances of *Browning* and this case: "In *Browning*, the plaintiff . . . had no motive to conceal its claim until after its bankruptcy was finalized because under its Chapter 11 reorganization plan any future assets would be distributed to creditors[,] not to [the plaintiff-debtor]. . . . [The plaintiff-debtor] gained nothing by waiting to file suit." *Music v. Arrowood Indem. Co.*, No. 09-98-ART, 2009 WL 4930775, at *3 (E.D. Ky. Dec. 15, 2009) (internal citation omitted)). In other words, the plaintiff-debtor in *Browning* could not leverage the civil lawsuit into a potential settlement with his creditors because the creditors would receive *any and all* recovery from the civil lawsuit *no matter what*. Patricia, however, has pointed to no such plan provision in her bankruptcy plan.

The totality of the circumstances here supports a finding of bad faith by Patricia for her nondisclosure of the instant action to the bankruptcy court and a motive for concealment. As such, for the reasons stated here and the Court's prior memorandum opinion, Patricia's claims will be barred by bankruptcy judicial estoppel and will be dismissed with prejudice.

10

### B.     <u>Sam's Loss of Consortium Claim</u>

Although Patricia's claims are barred by bankruptcy judicial estoppel, Sam's claim for loss of consortium is not. Defendants argue that Sam's loss of consortium claim should be dismissed with prejudice because it is "derivative" of Patricia's claims; that is, because Sam's loss of consortium claim is dependent on the success of Patricia's claims, it should also be dismissed with prejudice. "Under Kentucky law,[2] loss of consortium is a separate cause of action, but it is 'derivative' of the underlying tort claim." *Boggs v. 3M Co.*, No. 11-CV-57-ART, 2012 WL 3644967, at *12 (E.D. Ky. Aug. 24, 2012) (citations omitted). Normally, this means that a loss of consortium claim fails when "there are no primary claims left to support" such a claim. *Id*. Nevertheless, "[a] loss of consortium action can continue even when the injured spouse or the estate has settled or otherwise been excluded from an action, because there is not a 'common and undivided interest' in the spouse's claim for loss of consortium and the underlying tort claim." *Martin v. Ohio Cty. Hosp. Corp.*, 295 S.W.3d 104, 108 (Ky. 2009) (citations omitted); *see also Crime Fighters Patrol v. Hiles*, 740 S.W.2d 936, 941 (Ky. 1987) ("The spouse's right to loss of consortium is a separate claim, not dependent on her husband's ability to recover in those situations where the claim of the injured spouse is barred for some reason other than liability." (citation omitted)). In other words, although Sam's of loss consortium claim would fail if Patricia's claims failed on the merits, because Patricia's claims have been barred for equitable reasons, Sam's loss of consortium claim survives. Defendants' motion for summary judgment based on judicial estoppel will therefore be denied with respect to Sam's loss of consortium claim.

---

[2] The parties agree that Kentucky law forms the state substantive law underlying this diversity action. (Defs.' Mem. Supp. Mot. Partial Summ. J. 3-4, DN 53; Pls.' Resp. Defs.' Mot. Partial Summ. J. 3, DN 59).

11

### C. Immediate Appeal

As all of Patricia's claims have been dismissed with prejudice, but Sam's loss of consortium claim remains, the Court is presented with an efficiency problem. Apart from the arguments presented in the previous section, Defendants have not otherwise moved for summary judgment on Sam's loss of consortium claim, nor have they moved for summary judgment on the totality of Patricia's claims on their merits which could bar Sam's derivative loss of consortium claim. If the Sixth Circuit were to reverse this Court's bankruptcy judicial estoppel determination after a trial on Sam's claim occurred, the Court may have to hold another trial on Patricia's claims that would necessarily replicate the trial on Sam's claims.

As such, final judgment as to Patricia's claims will be entered pursuant to Fed. R. Civ. P. 54(b) and will be certified for immediate appeal. *See* Fed. R. Civ. P. 54(b) ("[W]hen multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, . . . parties only if the court expressly determines that there is no just reason for delay."); *see also Corrosioneering, Inc. v. Thyssen Envtl. Sys., Inc.*, 807 F.2d 1279, 1282 (6th Cir. 1986) ("Rule 54(b) provides a means by which a district court may release for immediate appeal final decisions resolving 'one or more but fewer than all of the claims or parties' in a multiple-claim or multiple-party action . . . ." (citations omitted)).

The Court also invokes its power under 28 U.S.C. § 1292(b):

> When a district judge, in making a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order: *Provided, however*, That application for an appeal hereunder shall not stay proceedings in the

>district court unless the district judge or the Court of Appeals or a judge thereof shall so order.

The Court finds that the application of the bankruptcy judicial estoppel doctrine to bar Patricia's claims gives rise to a substantial ground for difference of opinion as, although other courts have found that bankruptcy judicial estoppel applies to bar a debtor's civil claims even when the debtor does not receive a discharge, the parties have not presented and the Court is otherwise unaware of Sixth Circuit precedent so holding. *See, e.g.*, *Williams*, 375 F. App'x at 627-28 (also citing other circuits' cases); *Assasepa v. JPMorgan Chase Bank*, No. 1:11-cv-156, 2012 WL 88162, at *15-16 (S.D. Ohio Jan. 11, 2012). Additionally, for the same efficiency argument articulated above, an immediate appeal here could materially advance the ultimate termination of the litigation.

For these reasons, the Court will enter final judgment and a certificate of appealability on Patricia's claims pursuant to Fed. R. Civ. P. 54(b) and invoke its Section 1292(b) power to afford Patricia the right immediately to appeal this Court's determination that her claims should be dismissed with prejudice pursuant to the doctrine of bankruptcy judicial estoppel. The Court will also stay this case pending appeal.[3]

---

[3] Several issues may be raised again on remand, depending on the outcome of the appeal, including: (1) whether Counts II, IV, and VI through XII of Plaintiffs' Short Form Complaint should be dismissed with prejudice upon Plaintiffs' concession that they would no longer pursue such claims; (2) whether Count XIII of Plaintiffs' Short From Complaint should be dismissed with prejudice because that claim is duplicative of others and requires the existence of privity of contract, which Defendants argue does not exist; (3) whether Count XV of Plaintiffs' Short Form Complaint should be dismissed with prejudice for lack of evidentiary support; and (4) all of the parties' expert witness challenges as outlined in the parties' joint status report. (Defs.' Mot. Partial Summ. J. 1-2; Defs.' Mem. Supp. Mot. Partial Summ. J. 10-11; Pls.' Resp. Defs.' Mot. Partial Summ. J. 1-6; Defs.' Reply Mot. Partial Summ. J. 1-4; Defs.' Mem. Supp. Mot. Summ. J. 9; Pls.' Resp. Defs.' Mot. Summ. J. 1-2, 6-7; Joint Status Report 3-13, DN 109).

## V. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that:

1. Defendants' Motion for Summary Judgment (DN 54) will be **GRANTED IN PART** and **DENIED IN PART**. All of Patricia's claims are **DISMISSED WITH PREJUDICE**. Sam's loss of consortium claim survives. This matter is **STAYED** pending appeal.

2. Plaintiffs' Motion for Leave to File a Supplemental Brief (DN 116) is **DENIED**.

3. Defendants' Motion for Partial Summary Judgment (DN 52) and the parties' expert witness challenges will **HELD IN ABEYANCE** pending an appeal by Plaintiffs.

Greg N. Stivers, Chief Judge
United States District Court

September 30, 2020

cc: counsel of record