UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:19-CV-00175-GNS

SAM TERRY; and
PATRICIA TERRY                                                                      PLAINTIFFS

v.

ETHICON, INC.; and
JOHNSON & JOHNSON, INC.                                                      DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

This case is before the Court on Defendants' Motion for Partial Summary Judgment (DN 52), Defendants' Motion to Exclude Expert Testimony (DN 56), and Defendants' Motion for Summary Judgment (DN 125). The motions are ripe for adjudication. For the reasons outlined below, Defendants' Motion for Partial Summary Judgment is **GRANTED**, Defendants' Motion to Exclude Expert Testimony is **DENIED**, and Defendants' Motion for Summary Judgment is **GRANTED IN PART** and **DENIED IN PART**.

      **I.**     **STATEMENT OF FACTS AND CLAIMS**

Plaintiff Patricia Terry ("Patricia") underwent a surgical procedure to implant a Gynecare TVT-Secur ("TVT-S") device to treat her urinary stress incontinence and cystourethrocele.[1] (Pls.' Short Form Compl. ¶¶ 8-9, DN 1). Patricia claims a multitude of ailments stemming from the implantation of this device which was designed, manufactured, marketed, and sold by Defendants

---

[1] Cystourethrocele is the "herniation of the neck of the female bladder and associated urethra into the vagina." *Cystourethrocele*, *Merriam-Webster Medical Dictionary*, https://www.merriam-webster.com/medical/cystourethrocele (last visited Dec. 6, 2021).

Ethicon, Inc. ("Ethicon") and Johnson & Johnson, Inc. ("Johnson & Johnson").  (P. Terry Dep. 105:1-108:24, 113:1-24, June 21, 2017, DN 125-4; First Am. Master Compl. ¶ 7, DN 75-1; Ethicon Master Answer ¶ 7, DN 75-2; Johnson & Johnson Master Answer ¶ 7, DN 75-3).

Plaintiffs Patricia and her husband, Sam Terry ("Sam"), brought an 18-count action against Defendants, which is one of 400 cases selected for discovery as part of the Ethicon Wave 6 multidistrict litigation cases.  (Pls.' Short Form Compl. ¶¶ 6, 13; Pretrial Order # 251, at 1, 8, DN 20).  Sam asserts a claim for loss of consortium alleging he was required to undergo a circumcision resulting from the cessation of their sexual relationship due to Patricia's complications from the TVT-S.  (S. Terry Dep. 27:3-20, June 21, 2017, DN 125-6).  Sam testified that the circumcision resulted in a reduction of his penis length and that he can no longer attain an erection.  (S. Terry Dep. 28:6-17).

Defendants currently have two motions pending before this Court.  One, held in abeyance pending appeal, sought dismissal of some of Patricia's claims.  (DN 52).  The parties also filed challenges to each other's expert witnesses should the case proceed to trial.  (Joint Status Report 3-13, DN 109).  Patricia's claims were dismissed on the basis of bankruptcy judicial estoppel, but Sam's loss of consortium claim survived the dismissal.  (DN 121).  Subsequently, Defendants moved for summary judgment on Sam's loss of consortium claim.  (DN 125).  Defendants' challenge to expert opinions of Dr. Bruce Rosenzweig ("Dr. Rosenzweig") were stayed after the dismissal of Patricia's causes of action, and the admissibility of his opinions is addressed below.

The claims which underlie Sam's loss of consortium claim are negligence and gross negligence in design (Count I) and failure to warn (Count XIV), strict liability for failure to warn (Count III) and for design defect (Count V).

## II.    JURISDICTION

Diversity jurisdiction exists over this matter, as Plaintiffs are Kentucky residents, and Johnson & Johnson and Ethicon are both incorporated with their principal places of businesses in New Jersey. (Pls.' Short Form Compl. ¶ 4; Ethicon Master Answer ¶¶ 3-4; Johnson & Johnson Master Answer ¶¶ 3-4). The amount-in-controversy appears to exceed the $75,000 threshold. 28 U.S.C. § 1332; (Pls.' Short Form Compl. ¶ 4; Ethicon Master Answer ¶¶ 3-4; Johnson & Johnson Master Answer ¶¶ 3-4).

## III.    DISCUSSION

The parties agree that Kentucky law governs the substantive claims in this case. (*See* Defs.' Mem. 3-4, DN 534; *see generally*, Pls.' Resp. Defs.' Mot. Partial Summ. J., DN 59).

As an initial matter, Sam argues that Defendants' motion was filed without the permission of this Court. In this Court's January 29, 2021, Order (DN 124), the parties were permitted 30 days to file any additional Motions for Summary Judgment on remaining dispositive issues not addressed by the September 30, 2020, Order. (DN 121). The challenge to Sam's loss of consortium claim was filed within 30 days of January 29, 2021, and therefore the Court will permit the parties to be heard on the matter.

### A.    Ethicon and Johnson & Johnson's Challenge to the Expert Testimony of Dr. Bruce Rosenzweig (DN 56)

The MDL court has found Dr. Rosenzweig's testimony to be reliable and relevant as it pertains to the remaining arguments in this case (DN 109-7). The only testimony of Dr. Rosenzweig, urogynecologist and pelvic surgeon, pertinent to Defendants' motion for summary judgment is his suggestion of alternative methods of treatment, such as the Ultrapro mesh. Under Fed. R. Evid. 702, expert testimony is admissible if it will "help the trier of fact to understand the evidence or to determine a fact in issue and (1) is based upon sufficient facts or data and (2) is the

3

product of reliable principles and methods which (3) has been reliably applied to the facts of the case." *Huskey v. Ethicon, Inc.*, 29 F. Supp. 3d 691, 703 (S.D.W. Va. 2014) (internal quotation marks omitted) (quoting *Daubert v. Merrill Dow Pharms, Inc.,* 509 U.S 579, 597 (1993)). Under Rule 702, "the witness must be qualified by 'knowledge, skill, experience, training, or education.'" Fed. R. Evid. 702. The testimony must be relevant, meaning that it "will assist the trier of fact to understand the evidence or to determine a fact in issue . . . ." *Id.* The testimony must also be reliable. *Id.*

The MDL court found Dr. Rosenzweig possesses the qualifications required by the Federal Rules of Civil Procedure, which is the necessary knowledge, skill, experience, training, or education to make a finding on alternative designs. Fed. R. Evid. 702.

> Dr. Rosenzweig has a reliable basis for his design opinions. He considered more than internal corporate documents in arriving at his opinion on the design of the relevant products; he relied on his experience and relevant scientific literature. His detailed examination of the literature in light of his firsthand experience with mesh devices satisfies the reliability requirements of *Daubert*.

*In re Ethicon Inc. Pelvic Repair Sys. Prod. Liab. Litig*., No. 2327, 2020 WL 1061091, at *6 (S.D.W. Va. Feb. 13, 2020). This Court agrees with the MDL court's ruling. The only facet of Dr. Rosenzweig's testimony considered separately here is his opinion regarding alternatives to the TVT-S. Defendants assert that this testimony should be precluded because Ultrapro "has never been available for the treatment of stress urinary incontinence and there is no reliable evidence that a device with Ultrapro mesh would have been safer or as efficacious as TVT-S." (Defs.' Mem. Supp. Mot. Exclude 10, DN 57). Defendants further argue that the testimony is irrelevant. (Defs.' Mem. Supp. Mot. Exclude 10).

As an initial matter, "relevance turns on whether the expert testimony relates to any issues in the case." *Daubert*, 509 U.S at 597. Given that Dr. Rosenzweig's testimony relates to an

essential element of the design defect claim, such testimony certainly holds relevance. The MDL court agreed and further determined that the testimony is reliable, noting that "Dr. Rosenzweig's opinions are sufficiently relevant and reliable to move forward. To the extent Ethicon believes Dr. Rosenzweig's opinions are deficient, it may attack those opinions on cross-examination." *In re Ethicon, Inc. Pelvic Repair Sys. Prod. Liab. Litig.*, No. 2:12-CV-02512, 2017 WL 2840488, at *2 (S.D.W. Va. June 30, 2017). After the filing of the parties' motions, the MDL court held in the Wave 7 cases that Dr. Rosenzweig is qualified to testify regarding Ultrapro:

> Ethicon first argues that this testimony is based on a logical fallacy—the logical fallacy being that a device that results in fewer complications is a safer alternative design. I see no logical fallacy here; whether an alternative device has few complications is surely related to whether the alternative is safer. Ethicon then argues that Dr. Rosenzweig cannot claim Ethicon had insufficient long-term studies about its mesh products and then offer up an alternative (i.e., Ultrapro) that was the subject of a single study and that Dr. Rosenzweig believes should be studied longer. I am not convinced these facts render Dr. Rosenzweig's expert testimony unreliable, especially considering his reliance on other studies that he explains are relevant to this expert testimony.

*In re Ethicon Inc. Pelvic Repair Sys. Prod. Liab. Litig.*, 2020 WL 1061091, at *4.

Dr. Rosenzweig's ability to testify regarding Ultrapro has been upheld in numerous courts across the country in this MDL. *See Bell v. Ethicon Inc.*, No. 4:20-CV-3678, 2021 WL 1111071, at *5 (S.D. Tex. Mar. 23, 2021) (applying risk utility analysis and holding that the jury can consider the testimony regarding safer design alternatives); *Messina v. Ethicon, Inc.*, No. 6:20-cv-1170-Orl-40LRH, 2020 WL 7419586, at *4 (M.D. Fla. Dec. 17, 2020) (applying the risk utility test also adopted by Kentucky and noting that "Dr. Rosenzweig's opinion that alternate medical procedures were safe and effective . . . are relevant to demonstrating that the [product's] inherent risks outweigh its benefits." (footnote omitted)). Furthermore, "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596

5

(citation omitted).  In *Wilder v. Ethicon, Inc.*, No. 2:20-CV-141-KAC-HBG, 2021 WL 4302901 (E.D. Tenn. Sept. 21, 2021), the defendants argued that Dr. Rosenzweig did not offer any studies to support his opinion on the feasibility of Ultrapro.  *Id*. at *5.  The *Wilder* court noted that the MDL court allowed Dr. Rosenzweig's testimony and subsequently concurred with that opinion. *Id*.  In *Sexton v. Ethicon, Inc.*, No. 5:20-CV-282, 2021 WL 4138399 (E.D. Ky. Sept. 10, 2021), our sister court also found that "Dr. Rosenzweig's opinions are both relevant and supported by his experience and reliable materials, including various publications." *Id*. at *8.  Consistent with the other courts considering this precise question, the Court will allow Dr. Rosenzweig's testimony.

      **B.**    **Ethicon and Johnson & Johnson's Motion to Dismiss Sam's Loss of Consortium Claim (DN 125)**

In ruling on a motion for summary judgment, the Court must determine whether there is any genuine issue of material fact that would preclude entry of judgment for the moving party as a matter of law.  *See* Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of stating the basis for the motion and identifying evidence in the record that demonstrates an absence of a genuine dispute of material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If the moving party satisfies its burden, the non-moving party must then produce specific evidence proving the existence of a genuine dispute of fact for trial.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

While the Court must view the evidence in the light most favorable to the non-moving party, the non-moving party must do more than merely show the existence of some "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (citation omitted). Rather, the non-moving party must demonstrate that a genuine factual dispute exists by "citing to particular parts of the materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute . . . ." Fed. R. Civ. P.

56(c)(1).  "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient" to overcome summary judgment.  *Anderson*, 477 U.S. at 252.

Under Kentucky law, loss of consortium is a separate cause of action but is derivative of the underlying claim.  *Burgett v. Troy-Bilt LLC*, 970 F. Supp. 2d 676, 685 (E.D. Ky. 2013) (citations omitted) (applying Kentucky law).  "[A] loss of consortium action can continue even when the injured spouse or the estate has settled or otherwise been excluded from an action, because there is not a 'common and undivided interest' in the spouse's claim for loss of consortium and the underlying tort claim."  *Martin*, 295 S.W.3d at 108 (citations omitted); *see also Crime Fighters Patrol v. Hiles*, 740 S.W.2d 936, 941 (Ky. 1987) ("The spouse's right to loss of consortium is a separate claim, not dependent on her husband's ability to recover in those situations where the claim of the injured spouse is barred for some reason other than liability." (citation omitted)).  While loss of consortium is an independent cause of action that seeks to compensate a spouse's legal injury, it is derivative of the claims of the individual who suffered actual physical injury.  *Halcomb v. Britthaven, Inc.*, No. 6:12-255-DLB-HAI, 2015 WL 998560, at *11 (E.D. Ky. Mar. 5, 2015); *Cutter v. Ethicon, Inc.*, No. 5:19-443-DCR, 2020 WL 109809, at *6 (E.D. Ky. Jan. 9, 2020).  Though Patricia's claims against Ethicon and Johnson & Johnson were barred by bankruptcy estoppel, her husband's claim survives.  In order to recover for loss of consortium, Sam must prove that Defendants were liable on Patricia's underlying claim.  Defendants' Motion for Summary Judgment seeks dismissal of the claims for failure to warn and defective design.

        **1.**     ***Failure to Warn (Counts I, III, and XIV).***

To establish a products liability claim for failure to warn, Sam must prove:  (1) Defendants failed to provide Dr. Michael Cohn ("Dr. Cohn") with adequate warnings regarding the TVT-S; and (2) the inadequate warnings were the proximate cause of Patricia's underlying injuries.  *See*

*Est. of DeMoss v. Eli Lilly & Co.*, 234 F. Supp. 3d 873, 880 (W.D. Ky. 2017) (citation omitted). Under Kentucky's learned intermediary doctrine, "the prescribing physician is in a superior position to impart the warning and can provide an independent medical decision as to whether [the medical product] . . . is appropriate for treatment of a particular patient." *Larkin v. Pfizer, Inc.*, 153 S.W.3d 758, 763 (Ky. 2004). Dr. Cohn, the implanting physician, was aware of the specific risks and complications resulting from implanting the TVT-S. He testified:

> Q. . . . Well, were you aware at the time, by 2008, or – yeah, after your training, that pain, erosion, vaginal scarring, recurrence of the condition, the stress urinary incontinence, dyspareunia, pain with intercourse were all possible complications of implanting TVT-S?
> A. Yes.
> . . .
> Q. . . . Based on your education, your training, your clinical experience, and the medical literature, are there any complications that Mrs. Terry experienced, and by that, I mean the vaginal pain, the dyspareunia, and then the complaints of infections, that you were not aware of prior to implanting the TVT-S in Mrs. Terry?
> A. No.
> . . .
> Q. Putting yourself back at the time you implanted TVT-S into Mrs. Terry but with any knowledge that you have today, do you agree TVT-S was safe and effective for the treatment of stress urinary incontinence in women?
> A. Yes.
> . . .
> Q. And when you said you had a—you found that TVT-S was effective based on your clinical experience and treatment of patients; is that fair?
> A. Yes.
> Q. And if TVT-S wasn't effective, you would have stopped using it, correct?
> A. Yes.

(Cohn Dep. 19:6-12, 66:17-23, 69:9-14, 116:23-117:4, Aug. 9, 2017, DN 125-2).

Sam concedes that Dr. Cohn was warned, but points to *Larkin v. Pfizer, Inc.*, which recognized that "[e]ven though the manufacturer's duty to warn runs only to the learned intermediary, that warning must still be adequate." *Larkin*, 153 S.W.3d at 764 (citation omitted). Dr. Cohn testified that he likely did look at the relevant warnings (the instructions for use or "IFU") provided for the implantation of the TVT-S, but likely only for the first surgery he performed and

8

not again before Patricia's surgery. (Cohn Dep. 64:8-25, 65:1-23). In contrast, the *Cutter* court found that further warnings would have been futile because the implanting physician had not consulted the IFU materials and in fact had never relied on them. *Cutter*, 2020 WL 109809, at *8. Dr. Cohn testified that while he did not rely on the IFU specifically before each surgery, he had read the information and relied on it to provide accurate information and continued to rely on it for each surgery he performed. (Cohn Dep. 99:3-25, 100:1-25). The IFU does not have to be the only source of information relied upon by Dr. Cohn, rather "whether the IFU was [the doctor's] sole source of information is inconsequential. Instead, the relevant inquiry is whether [the doctor] relied on the IFU." *Sexton*, 2021 WL 4138399, at *3 (citation omitted). As a result, an issue of fact remains as to whether the warnings given by Defendants to the implanting physician were sufficient, as Dr. Cohn relied at least in part on the IFU.

      The adequacy of the warnings is not determinative, as Sam must also establish proximate cause: "[A] plaintiff asserting a strict products liability claim for failure to warn in Kentucky must establish that the manufacturer had a duty to warn, any warnings given were inadequate, and the inadequate warnings were the proximate cause of the injury." *Cutter*, 2020 WL 109809, at *7 (citations omitted). Even if the warnings given were inadequate, Sam's failure to warn claim cannot proceed due to a lack of causation. *Sexton*, 2021 WL 4138399 at *8 (holding that the proximate cause element is not met because the implanting physician knew the risks ranged from mild to severe prior to performing the surgery; implanting physician nevertheless maintained his opinion that the TVT-S was safe and effective). Dr. Cohn was aware the risks ranged from mild to severe. (Cohn Dep. 24:8-12). Further, Dr. Cohn has testified that even with his current knowledge of the TVT-S side effects, he still believes the device is effective and safe for use. (Cohn Dep. 69:9-14). As a result, any inadequacy of Ethicon's warnings did not proximately cause

9

Patricia's injuries, as Dr. Cohn maintains the belief that the TVT-S is safe and effective, and he was aware of the relevant side effects. Therefore, Sam's loss of consortium claim cannot continue under a theory of liability for failure to warn.

### 2. *Design Defect (Counts, I, V, and XIV)*

Defendants also contend that Sam has not established a loss of consortium claim for design defect of the TVT-S. (Defs.' Mem. Supp. Mot. Dismiss 9). "Kentucky law . . . stands for the proposition that design defect liability requires proof of a feasible alternative design." *Toyota Motor Corp. v. Gregory*, 136 S.W.3d 35, 42 (Ky. 2004), *as amended* (June 14, 2004). "[T]he onus is on Plaintiffs to provide expert testimony setting forth 'competent evidence of some practicable, feasible, safer, alternative design.'" *Est. of Bigham v. DaimlerChrysler Corp.*, 462 F. Supp. 2d 766, 773 (E.D. Ky. 2006) (citing *Gray v. Gen. Motors Corp.*, 133 F. Supp. 2d 530, 535 (E.D. Ky. 2001))). Plaintiffs' expert, Dr. Rosenzweig, proposes the following alternatives: "(1) the use of sutures, including delayed absorbable sutures like PDS, in a colposuspension procedure, like the Burch; (2) autologous fascia lata and an autologous fascia sling; (3) an allograft sling such as Repliform; and (4) a sling with less polypropylene such as Ultrapro." (Rosenzweig Report 26, DN 125-8).

In his response, Sam only raises the last alternative regarding an Ultrapro sling. (Pl.'s Resp. Defs.' Mot. Summ. J. 13). The court in *Sexton* addressed the same proposed alternatives by Dr. Rosenzweig. *Sexton*, 2021 WL 4138399, at *6.[2] Defendants made substantially similar

---

[2] This Court is aware of the recent opinion from the Eastern District of Kentucky in *Thacker v. Ethicon, Inc.*, No. 5:20-CV-0050-JMH-MAS, 2021 WL 5362076 (E.D. Ky. Nov. 17, 2021), which dismisses a design defect claim on the basis of insufficient citations to the record to establish a genuine issue of material fact regarding the feasibility of Ultrapro as a safer alternative design. *Id.* at *9. Like the plaintiff in *Sexton*, Sam has provided sufficient citation to the record to establish a question of fact for the jury.

10

arguments in *Sexton* as they raise here: that Dr. Rosenzweig believed that more study was needed to approve Ultrapro; the FDA has not approved Ultrapro for use in mesh slings; Ultrapro is unsafe because it contains polypropylene mesh; and that Ethicon tried and abandoned a project using a mesh like Ultrapro as a sling. *Sexton*, 2021 WL 4138399, at *6; (Defs.' Mem. Supp. Mot. Dismiss 14-16). The *Sexton* court found that the threshold was only that the proposed design be *safer*, not that it eliminates all risk. *Sexton*, 2021 WL 4138399, at *6. The court ruled that "Ethicon may cross-examine Dr. Rosenzweig at trial about the feasibility and safety concerns of products that are not FDA approved and whether less polypropylene mesh would have been safer and introduce evidence regarding the denial of its past product . . . ." *Id*. This Court agrees that viability of Ultrapro as a safer alternative is more appropriate for cross examination than a basis for summary judgment. *See Ellis v. Ethicon, Inc.*, No. 2:20-CV-223-CEA-HBG, 2021 WL 4302339, at *7 (E.D. Tenn. Sept. 21, 2021). As Dr. Rosenzweig is permitted to offer Ultrapro as a substitute and the feasibility of its use is better suited to cross examination at trial, Sam's loss of consortium claim survives on a theory of liability based on design defect.

### 3. *Personal Injury/Punitive Damages (Claim XVI), and Discovery Rule and Tolling (Claim XVII)*

Sam further asserts that he required a circumcision, lost penis length, and suffers from erectile dysfunction all as direct consequence of his inability to have intercourse with his wife. (Pl.'s Resp. Defs.' Mot. Summ. J. 19). However, spousal consortium claims are limited to loss of "services, assistance, aid, society, companionship and conjugal relationship . . . ." KRS 411.145(1). Sam's personal injury claims do not appear to fall under the purview of a loss of consortium claim. (First Am. Master Compl. ¶¶ 226-32).

Even if Sam had asserted a personal injury claim, he has not provided evidence sufficient to warrant submission of that claim to a jury. Kentucky law requires that "[m]edical causation

11

must be proved to a reasonable medical probability." *Hyman & Armstrong, P.S.C. v. Gunderson*, 279 S.W.3d 93, 106 (Ky. 2008), *as modified on reh'g* (Nov. 26, 2008) (citing *Brown-Forman Corp. v. Upchurch*, 127 S.W.3d 615, 621 (Ky. 2004); *Turner v. Commonwealth*, 5 S.W.3d 119, 122 (Ky. 1999)); *see, e.g.*, *Vance By & Through Hammons v. United States*, 90 F.3d 1145, 1148 (6th Cir. 1996) (holding expert testimony required to show causation between failure to diagnose pneumonia and Legionnaires' disease and the subsequent non-ambulatory status of patient); *Blair v. GEICO Gen. Ins. Co.*, 917 F. Supp. 2d 647, 657 (E.D. Ky. 2013) (finding testimony needed to determine if a car accident caused neck pain complained of when there is evidence of previous neck pain, fibromyalgia, and a brain tumor); *Lacefield v. LG Elecs., Inc.*, No. 3:06-12-KKC, 2008 WL 544472, at *3 (E.D. Ky.2008) (holding claim of permanent hearing loss and tinnitus due to cellphone emitting a sharp sound in plaintiff's ear fails for lack of expert causation testimony); *Baptist Healthcare Sys., Inc. v. Miller*, 177 S.W.3d 676, 680 (Ky. 2005) (holding expert testimony needed to establish causation between nerve damage to arm and phlebotomist leaving a tourniquet on patient's arm while drawing blood). This is not the type of injury that speaks for itself. The notion that sexual abstinence causes physical injury is hardly a commonly understood phenomenon. Consequently, Sam must present expert proof of medical causation. *Hyman*, 279 S.W.3d at 106. In this instance, Sam has produced no medical proof linking his personal maladies to his wife's injuries. Therefore, Defendants are entitled to summary judgment on Sam's personal injury claim.

Furthermore, punitive damages are not appropriate. Regarding KRS 411.145, Kentucky's loss of consortium statute, "[t]he general focus of this statute is compensatory in nature." *Martin*, 295 S.W.3d at 109. Sam has a claim for loss of consortium only, and his loss of consortium damages include "those that describe the personal relationship, mental and physical, between

12

spouses", but not punitive damages. *Id.* at 110. Only compensatory damages may be pursued with respect to Sam's loss of consortium claim. With regard to Count XVII itself, "a claim for punitive damages is not a separate cause of action, but a remedy potentially available for another cause of action." *Grubbs v. Thermo Fisher Sci.*, No. 13-183-DLB, 2014 WL 1653761, at *3 (E.D. Ky. Apr. 23, 2014) (quoting *Dalton v. Animus Corp.*, 913 F. Supp. 2d 370, 378 (W.D. Ky. 2012)). Therefore, Count XVII for punitive damages will be dismissed.[3]

### C. Defendants' Motion for Partial Summary Judgment (DN 52)

This Court previously held Defendants' Motion for Partial Summary Judgment in abeyance pending an appeal by Plaintiff of the dismissal of her claims due to bankruptcy judicial estoppel. (Order 13, DN 121)[4]. Patricia filed no appeal to the dismissal. As stated in the Court's September 30, 2020, Memorandum Opinion and Order, the only remaining claims were for the violation of the KCPA (Count XIII) and unjust enrichment (Count XV). Neither claim, however, supports a loss of consortium action. In Kentucky, loss of consortium is a remedy at law "[e]ither a wife or husband may recover damages against a third person for loss of consortium, resulting from a negligent or wrongful act of such third person." KRS 411.145. Consequently, Sam has no loss of consortium claim deriving from Patricia's KCPA or unjust enrichment claims.

#### 1. *KCPA (Count XIII)*

As discussed above, Patricia is no longer a party to this action due to bankruptcy estoppel. (Order 15, DN 21). Regardless, her KCPA claim would also fail on the merits (Count XIII). A

---

[3] Discovery Rule and Tolling (Count XVIII) is also not a separate cause of action. *Petrey v. Ethicon, Inc.*, No. CV 5:19-298-DCR, 2019 WL 5295185, at *3 (E.D. Ky. Oct. 18, 2019). These represent "theories under which statutes of limitations may be extended." *Id.* Time bar has not been identified by the parties as an issue under the remaining claims.

[4] In the motion, Patricia's Kentucky Consumer Protection Act ("KCPA") (Count XIII) and unjust enrichment (Count XV) claims were all that remained after Plaintiffs agreed not to pursue the claims asserted in Counts II, IV, and VI-IX. (Pls.' Resp. Defs.' Mot. Summ. J. 1, DN 59).

recent decision, also part of the multi-district litigation against Defendants, *Burton v. Ethicon Inc.*, No. CV 5:20-280-DCR, 2020 WL 5809992 (E.D. Ky. Sept. 29, 2020), found that that privity of contract is required in a private right of action under the KCPA. *Id.* at *8. Like Plaintiffs in the instant action, the plaintiff in *Burton* argued that privity of contract was not required as Defendants made a warranty "for the benefit of the subsequent purchaser." *Skilcraft Sheetmetal, Inc. v. Ky. Mach., Inc.*, 836 S.W.2d 907, 909 (Ky. App 1992); (Pls.' Resp. Defs.' Mot. Summ. J. 4). Summary judgment was granted in *Burton* on the KCPA claim because, while no Kentucky authority had directly addressed the issue, other jurisdictions found that medical devices used by physicians during surgery were not household devices under consumer protection laws. *Burton*, 2020 WL 5809992, at *8 (citing *Collins v. Davol, Inc.*, 56 F. Supp. 3d 1222, 1231 n.9 (N.D. Ala. 2014) (hernia mesh implanted into plaintiff's abdomen was not consumer good); *Herzog v. Arthrocare Corp.*, No. 02-76-P-C, 2003 WL 1785795 (D. Me. Mar. 21, 2003) (surgical tool used for knee was not a consumer good); *Reeves v. PharmaJet, Inc.*, 846 F. Supp. 2d 791 (N.D. Ohio 2012); *Kemp v. Pfizer*, 835 F. Supp. 1015, 1024-25 (E.D. Mich. 1993) (surgically implanted medical devices "are not customarily available to the ordinary person.")). In accordance with the ruling in *Burton*, the KCPA claim would fail for Patricia and therefore also for Sam.

### 2.    *Unjust Enrichment (Count XV)*

Plaintiffs do not maintain in their response that Sam joins Patricia's unjust enrichment claim. The question at the summary judgment phase "is whether the moving party has demonstrated that the evidence available to the court establishes no genuine issue of material fact such that it is entitled to a judgment as a matter of law." *Dobrowski v. Jay Dee Contractors, Inc.*, 571 F.3d 551, 554 (6th Cir. 2009). There is no indication that Sam is pursuing a claim for unjust enrichment, which is an equitable claim. *See Superior Steel, Inc. v. The Ascent at Roebling's*

14

*Bridge, LLC*, 540 S.W.3d 770, 778 (Ky. 2017). Because loss of consortium is a legal as opposed to an equitable claim, it does not appear that the former may be predicated on the latter. Because Patricia is no longer a party to this action, Sam's loss of consortium claim for unjust enrichment also fails.

## IV. CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** as follows:

1. Defendants' Motion for Partial Summary Judgment (DN 52) is **GRANTED.**

2. Defendants' Motion to Exclude Expert Testimony (DN 56) is **DENIED**.

3. Defendants' Motion for Summary Judgment (DN 125) is **GRANTED IN PART** and **DENIED IN PART**. Sam may proceed with respect to his claims for negligence, gross negligence, and strict liability on design defect (Counts I, V, and XIV).

Greg N. Stivers, Chief Judge
United States District Court

February 14, 2022

cc: counsel of record